**IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA, ORLANDO DIVISION**

| | |
|---|---|
| PROFESSIONAL, INC. d/b/a, PROFESSIONALS AUTO BODY, | **DISPOSITIVE MOTION** |
| Plaintiff, | MDL Docket No. 2557 |
| v. | |
| FIRST CHOICE AUTO INSURANCE COMPANY, et al., | Case No. 6:18-cv-06023-GAP-TBS |
| Defendants. | Originally filed in the Western District of Pennsylvania |

**MOTION TO DISMISS FOR LACK OF
JURISDICTION, AND ALTERNATIVELY FOR
FAILURE TO STATE A CLAIM, AND INCORPORATED
MEMORANDUM OF LAW ON BEHALF OF DEFENDANTS
HARTFORD CASUALTY INSURANCE COMPANY, 21ST CENTURY
<u>INSURANCE COMPANY, AND FARMERS INSURANCE EXCHANGE</u>**

## **TABLE OF CONTENTS**

**Page(s)**

INTRODUCTION ............................................................................................................... 1

ALLEGATIONS .................................................................................................................. 2

ARGUMENT ....................................................................................................................... 5

I.     THE $75,000 JURISDICTIONAL
       THRESHOLD CANNOT BE SATISFIED BY AGGREGATION ................................. 5

       A.     The Damages Sought From Each Defendant Cannot Be Aggregated
              Because Plaintiff Does Not Allege That Defendants Are Jointly Liable ............... 5

       B.     The Amount In Controversy With Respect to Each
              of The Small Claims Defendants Does Not Exceed $75,000 ................................ 6

II.    THE ACTIONS AGAINST THE SMALL CLAIMS
       DEFENDANTS SHOULD BE SEVERED AND DISMISSED UNDER RULE 21 ......... 8

       A.     Severance and Dismissal of the
              Small ClaimsDefendants Is the Appropriate Remedy ........................................... 9

       B.     The Small Claims Defendants Should Be Dismissed Because
              the Jurisdictional Threshold Cannot Be Met Against Them Individually ........... 10

III.   IN THE ALTERNATIVE, THE CASE
       SHOULD BE DISMISSED PURSUANT TO RULE 12(B)(6) ...................................... 11

       A.     Plaintiff's Complaint Should Be
              Dismissed Pursuant to Rule 12(b)(6) for Improper Claim-Splitting ................... 11

              1.     The Professionals Complaint Involves
                     the Same Parties and Privies as the *Alliance* Action,
                     Which Was Filed in Pennsylvania Earlier Than *Professionals* ................ 12

              2.     *Alliance* and this Case Arise From
                     the Same Transaction or Series of Transactions ....................................... 14

       B.     In the Alternative, The Court Should
              Grant the Defendants' Motion to Dismiss for Failure to State a Claim ............... 17

CONCLUSION ................................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................................................8

*Beacon Fisheries, Inc. v. C.H. Robinson Worldwide, Inc.*,
   No. 3:11-CV-495-J-32MCR, 2012 WL 3100399 (M.D. Fla. July 30, 2012) ...........................8

*Bennick v. Boeing Co.*,
   427 F. App'x 709 (11th Cir. 2011) ...................................................................9, 10

*Bos. Post Rd. Med. Imaging, P.C. v. Allstate Ins. Co.*,
   No. 03-cv-3923-RCC, 2004 WL 1586429 (S.D.N.Y. July 15, 2004) ..........................9, 11, 12

*Bradley v. GMAC Ins. Co.*,
   No. CV 03-5103, 2006 WL 8446175 (E.D. Pa. July 12, 2006), *aff'd,* 320 F.
   App'x 125 (3d Cir. 2008) ...........................................................................7

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*,
   116 F.3d 1364 (11th Cir. 1997) ...................................................................2

*Calixto v. BASF Const. Chems., LLC*,
   No. 07-60077-CIV, 2008 WL 2490454 (S.D. Fla. June 19, 2008)............................9

*Clements v. Essex Ins. Co.*,
   No. 6:16-cv-574-ORL-37, 2016 WL 3144151 (M.D. Fla. June 6, 2016).....................8, 9, 10

*Coccaro v. Geico Gen. Ins. Co.*,
   648 F. App'x 876 (11th Cir. 2016) ................................................................10

*Esteves v. SunTrust Banks, Inc.*,
   615 F. App'x 632 (11th Cir. 2015) ................................................................10

*Federated Mut. Ins. Co. v. McKinnon Motors, LLC*,
   329 F.3d 805 (11th Cir. 2003) ....................................................................6

*Florida Emergency Physicians Kang & Assocs., M.D., P.A. v. Auto-Owners Ins.
   Co.*,
   No. 6:12-CV-1006-ORL-37, 2012 WL 3537223 (M.D. Fla. July 30, 2012)...........................6

*Fritz v. Am. Home Shield Corp.*,
   751 F.2d 1152 (11th Cir. 1985) ....................................................................9

*Jewell v. Grain Dealer Mut. Ins. Co.*,
  290 F.2d 11 (5th Cir. 1961) ..................................................................5

*Katz v. Gerardi*,
  655 F.3d 1212 (10th Cir. 2011) .........................................................12

*McGee v. Solic. Gen. of Richmond Cty., Ga.*,
  727 F.3d 1322 (11th Cir. 2013) .........................................................10

*Morrison v. Allstate Indem. Co.*,
  228 F.3d 1255 (11th Cir. 2000) ...........................................................5

*Polselli v. Nationwide Mut. Fire Ins. Co.*,
  126 F.3d 524 (3d Cir. 1997)..................................................................7

*Pretka v. Kolter City Plaza II, Inc.*,
  608 F.3d 744 (11th Cir.2010) ...........................................................6, 8

*Quality Auto Painting Ctr. of Roselle, Inc. v. State Farm Indem. Co.*,
  917 F.3d 1249 (11th Cir. 2019) (en banc) ...........................................7

*Rumbough v. Comenity Cap. Bank*,
  748 F. App'x 253 (11th Cir. 2018) ................................................16, 17

*Vanover v. NCO Fin. Servs., Inc.*,
  857 F.3d 833 (11th Cir. 2017) .................................................12, 16, 17

*Watkins v. City of Lauderhill Police*,
  No. 18-cv-60110, 2018 WL 10246972 (S.D. Fla. Feb. 7, 2018) ...........16

*Yellow Pages Photos, Inc. v. Dex Media, Inc.*,
  No.8:18-cv-1872-T-36, 2019 WL 2247701 (M.D. Fla. May 24, 2019) ...............13, 14, 16, 17

**Statutes and Other Authorities**

28 U.S.C. § 1332...........................................................................6, 8, 11

28 U.S.C. § 1447.................................................................................10

Fed. R. Civ. P. 12(b)(1)........................................................................1

Fed. R. Civ. P. 12(b)(6)..........................................................2, 11, 17

Fed. R. Civ. P. 19 ............................................................................9, 10

Fed. R. Civ. P. 21 ..........................................................................*passim*

15A Moore's Federal Practice - Civil § 102.108 .................................5

## INTRODUCTION

Plaintiff Professional Inc. d/b/a Professionals Auto Body ("Professionals") brought suit against thirty-two defendants in Pennsylvania in 2017.  Some of those defendants removed the case to federal court under diversity jurisdiction, and then moved to have this case transferred to the Middle District of Florida as part of the MDL.  Plaintiff Professionals chose to combine all its claims against thirty-two different defendants, identified an aggregate damage amount of over $8 million, yet never squarely addressed the court's diversity jurisdiction on the basis of the individual defendants' citizenship or the amount in controversy.  The amount in controversy cannot be aggregated to establish subject matter jurisdiction as to all defendants because they are not sued for joint liability.  Professionals has failed to allege that the amount in controversy with respect to each of the moving defendants in this case (the "Small Claims Defendants")[1] exceeds the jurisdictional threshold of $75,000.  This defect is fatal.  Therefore, the Court should sever the claims against the Small Claims Defendants and then dismiss those actions for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1); Fed. R. Civ. P. 21.

But this is not the first case that Professionals has brought against the Small Claims Defendants.  Professionals was also a plaintiff in one of the earlier-filed cases in this MDL originating out of Pennsylvania, *Alliance of Automotive Service Providers, Inc., et al. v. State Farm Mutual Auto Insurance Company, et al.*, No. 14-cv-6008 (M.D. Fla.).  In that case, Professionals asserted antitrust and state law claims arising out of the same set of facts as are alleged by Professionals in the case at bar.  The state law claims now asserted by Professionals could have, and should have, been included in the *Alliance* case.  This is a classic example of improper claim-splitting.  Therefore, even if the Court were to determine that the claims against

---

[1] The Small Claim Defendants are Hartford Casualty Insurance Company ("Hartford Casualty"), 21st Century Insurance Company, and Farmers Insurance Exchange.

the Small Claims Defendants for less than $20,000 could theoretically exceed $75,000, these claims against the Small Claims Defendants should be dismissed pursuant to Rule 12(b)(6).

## ALLEGATIONS

In suing these thirty-two insurance company defendants, Professionals has asserted the same legal claims against each defendant: quantum meruit, unjust enrichment, breach of contract, bad faith, and intentional interference with a business relationship.  Compl. ¶¶ 54-100.  These claims are all premised on each insurer paying Professionals less to repair cars owned by different individuals than Professionals claims it is owed under the insured's policies.  *Id.* ¶¶ 38-39, 41-43, 45, 62, 93-94.  Professionals also alleges that the individual insureds agreed with Professionals that they would be responsible for the cost of the repair even if it was more than their insurer had agreed to pay.  *See, e.g.*, Hartford Casualty's Ex. A, attached hereto as Ex. 1, at 29 (individuals electing a level of repair understanding that the insurer may not pay for such repairs).  Every one of these transactions involves one insurer and one insured for each repair.  Professionals, however, has lumped together claims involving different insureds and different insurers in a single action.  Multiple "Exhibit As" allegedly contain documents relating to each individual customer whose cost of repairs was not fully paid by each of the various insurer defendants.  *See* Compl. ¶ 46.[2]  For example, with regard to Defendant Hartford Casualty, Professionals' Exhibit A shows fourteen separate customers, fifteen different assignments, fifteen different repairs—all of which aggregate to a total of only $14,781.38 in claimed

---

[2] Each Exhibit A was not filed on the federal docket for every defendant.  Instead, each defendant received a separate "Exhibit A."  The Exhibits are, nevertheless, a part of the complaint.  *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).  The Exhibits for the Small Claims Defendants are attached to this Motion as Exhibits 1 to 3.  As the Exhibits explain "Any and all documents pertinent to this Defendant are attached."  *E.g.*, Hartford Casualty's Ex. A, attached hereto as Exhibit 1, at 3.

damages.[3]  But the actual amount in controversy against the named defendant, Hartford

Casualty, is actually even lower.  As shown on Professionals' Exhibit A attached to the

Complaint, only three of the fifteen claims for unpaid repairs relate to policies that were

allegedly issued by Hartford Casualty:  Ex. 1 at 40, 66, 124 (Ms. Corl, Ms. Resig, and Mr.

Schraff).  The insurer for each of the other customers is alleged to be an entity other than

Hartford Casualty.  Thus, Professionals' claims against Hartford Casualty as set forth in the

Complaint's Exhibit A are alleged to be no more than $2,512.86.  *See supra* n.3.

For Defendants 21st Century Insurance Company and Farmers Insurance Exchange (the

"Farmers Defendants"), the Exhibits are far from a model of clarity.  Like Hartford Casualty,

21st Century Insurance Company's Exhibit A includes seventeen different customers, seventeen

different assignments, seventeen different repairs, which aggregate to a total of $16,426.58. [4]

Ten of the seventeen assignments included in 21st Century Insurance Company's Exhibit A,

---

[3] Those customers are Linda Weitzel who allegedly assigned $1,418.73 in unpaid repair fees, Ex. 1 at 7; Sara Crider who allegedly assigned $196.10 in unpaid repair fees, *id.* at 16; Philip Hallett who allegedly assigned $451.80 (in 2017) and $766.82 (in 2016) in unpaid repair fees, *id.* at 24, 51; Shelia Corl who allegedly assigned $1,199.12 in unpaid repair fees, *id.* at 33; Walter Hoover who allegedly assigned $2,960.14 in unpaid repair fees, *id.* at 42; Mong Lin Resig who allegedly assigned $641.83 in unpaid repair fees, *id.* at 59; Jefferey [sic] Hallett who allegedly assigned $1,515.38 in unpaid repair fees, *id.* at 68; Michael Nardelli who allegedly assigned $281.12 in unpaid repair fees, *id.* at 77; Rose Moore who allegedly assigned $629.44 in unpaid repair fees, *id.* at 86; Charles Hogan who allegedly assigned $2,069.45 in unpaid repair fees, *id.* at 95; Bertha Jane Lynn who allegedly assigned $1,362.52 in unpaid repair fees, *id.* at 104; Eric Detwiler who allegedly assigned $394.32 in unpaid repair fees, *id.* at 113; John Schraff who allegedly assigned $671.91 in unpaid repair fees, *id.* at 120; and Carl Emmert who allegedly assigned $222.70 in unpaid repair fees, *id.* at 126.

[4] Those customers include Jennifer Krug, who allegedly assigned $724.29 in unpaid repair fees.  *See* 21st Century's Ex. A, attached hereto as Ex. 2, at 4.  Those customers also include Earl Thomas, who allegedly assigned $659.02 in unpaid repair fees, *id.* at 10; Randy Meck, who allegedly assigned $944.45 in unpaid repair fees, *id.* at 18; Christina McIntosh who allegedly assigned $776.91 in unpaid repair fees, *id.* at 27; Stephen Trovato who allegedly assigned $420.99 in unpaid repair fees, *id.* at 32; Thomas Hughes who allegedly assigned $933.62 in unpaid repair fees, *id.* at 38; Jamie Kegg who allegedly assigned $389.40 in unpaid repair fees, *id.* at 46; Luke Johnson who allegedly assigned $889.40 in unpaid repair fees, *id.* at 55; John Ciprich, who allegedly assigned $2,077.16 in unpaid repair fees, *id.* at 62; Jamie Rightenour who allegedly assigned $545.01 in unpaid repair fees, *id.* at 71; Ruth Marshall who allegedly assigned $792.26 in unpaid repair fees, *id.* at 80; Joseph Shriver who allegedly assigned $1,289.39 in unpaid repair fees, *id.* at 89; Wendy Dukeman who allegedly assigned $2,225.29 in unpaid repair fees, *id.* at 98; Kim Shoeman who allegedly assigned $536.36 in unpaid repair fees, *id.* at 106; Mike Servello who allegedly assigned $116.60 in unpaid repair fees, *id.* at 115; Lisa Wessinger who allegedly assigned $1,628.79 in unpaid repair fees, *id.* at 123; and David Dishong, who allegedly assigned $1,477.64 in unpaid repair fees, *id.* at 132.

however, are for claims against a purported Farmers entity that is *not* 21st Century Insurance Company, like 21st Century Advantage Insurance Company.[5]  Four of those ten assignments state simply that the customer's insurer is "Farmers"; that is, not even a 21st Century entity at all. Moreover, those four "Farmers" assignments included in Defendant 21st Century Insurance Company's Exhibit A are *not* included in Defendant Farmers Insurance Exchange's Exhibit A. Yet, one of the assignments included in 21st Century Insurance Company's Exhibit A, from a Professionals customer named Stephen Trovato purportedly insured by 21st Century Indemnity Insurance Company (again, not a Defendant here), actually appears in ***both*** of the Farmers Defendants' Exhibit As.  Like 21st Century Insurance Company, Farmers Insurance Exchange's Exhibit A has fourteen different customers, fifteen different assignments, and fifteen different claims totaling $25,627.16,[6] but includes assignments from Farmers entities like Mid-Century Insurance Company, Farmers Alliance Mutual Insurance Co., and Farmers Insurance of Columbus, Inc., none of which are named as Defendants here.[7]  If the assignments naming

---

[5] *See id.* at 7 ( "21st Century Indemnity Insurance Company"); *id* at 23 ( "21st Century Auto Insurance Company"); *id.* at 30 ( "21st Century Advantage Insurance Company"); *id.* at 35 ("21st Century Indemnity Insurance Company"); *id.* at 59 ("Farmers"); *id.* at 68 ("Farmers"); *id.* at 77 ("Farmers"); *id.* at 86 ("21st Century Auto Insurance Company"); *id.* at 95 ("21st Century Indemnity Insurance Company Grand Rapids"); *id.* at 121 ("Farmers").

[6] Those customers are Frank Hartye, who allegedly assigned $592.27 in unpaid repair fees.  *See* Farmers Insurance Exchange's Ex. A, attached hereto as Ex. 3, at 3.  Those customers also include Rebecca Fortuna, who allegedly assigned $1002.37 in unpaid repair fees, *id.* at 10; Stephen Trovato, who allegedly assigned $420.99 in unpaid repair fees, *id.* at 16; Raymond Carlheim, Jr. who allegedly assigned $548.86 in unpaid repair fees, *id.* at 23; Patricia French, who allegedly assigned $1086.94 in unpaid repair fees, *id.* at 33; Paul Barley, who allegedly assigned $1341.48 and $2902.65 in unpaid repair fees, *id.* at 42, 51; Jennifer Krug, who allegedly assigned $481.29 in unpaid repair fees, *id.* at 60; Jeffrey Reilly, who allegedly assigned $967.39 in unpaid repair fees, *id.* at 101; Cynthia Emlet, who allegedly assigned $3281.10 in unpaid repair fees, *id.* at 110; Christopher Morgan, who allegedly assigned $2796.27 in unpaid repair fees, *id.* at 68; Dan Garwood, who allegedly assigned $1836.57 in unpaid repair fees, *id.* at 76; Tommy Vinglas, who allegedly assigned $812.76 in unpaid repair fees, *id.* at 85; Levi Shope, who allegedly assigned $1866.54 in unpaid repair fees, *id.* at 112; Falyn and George Adams, who allegedly assigned $2673.97 in unpaid repair fees, *id.* at 121; and Jennifer Meck, who allegedly assigned $3015.71 in unpaid repair fees, *id.* at 128.

[7] *See, e.g., id.* at 107 ("Mid-Century Insurance Company"); *id.* at 118 ("Farmers Insurance of Columbus, Inc.").

4

incorrect entities were removed from the Farmers Defendants' Exhibits, the amount in controversy would be even less than it is now.[8]

## ARGUMENT

## I.   THE $75,000 JURISDICTIONAL THRESHOLD CANNOT BE SATISFIED BY AGGREGATION

It is black-letter law that a "plaintiff must allege that the amount in controversy is in excess of the jurisdictional amount against each defendant unless the plaintiff's claims against the defendants are common and undivided so that the defendant's liability is properly characterized as joint and not several."  15A Moore's Federal Practice - Civil § 102.108. *See also Jewell v. Grain Dealer Mut. Ins. Co.*, 290 F.2d 11, 13 (5th Cir. 1961) (permitting aggregation only where defendants are jointly liable and holding that claims against insurers who were not jointly liable could not be aggregated); *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1263 n.7 (11th Cir. 2000).

### A.   The Damages Sought From Each Defendant Cannot Be Aggregated Because Plaintiff Does Not Allege That Defendants Are Jointly Liable

Here, there are no allegations that the "claims against the defendants are common and undivided so that the defendant's liability is properly characterized as joint and not several." 15A Moore's Federal Practice - Civil § 102.108.  Thus, the Court must analyze the jurisdictional threshold as it pertains to the claims at issue against each of the Small Claims Defendants on an

---

[8] Defendant 21st Century Insurance Company is a corporation organized under the laws of the State of California with its principal place of business in the State of Delaware.  Defendant Farmers Insurance Exchange is a reciprocal or inter-insurance exchange under California law, which has citizenship in all states where policyholders reside. The Complaint alleges that 21st Century Insurance Company is "registered with the Pennsylvania Insurance Department to do business within the state of Pennsylvania with a Pennsylvania address of 2595 Interstate Drive, Suite 103, Harrisburg, Pennsylvania, 17110." Compl. ¶ 3, *Professionals*, 6:14-cv-6023.  The Complaint alleges that Farmer Insurance Exchange is "registered to do business with the Pennsylvania Insurance Department and is doing business in the State of Pennsylvania with a Pennsylvania address of 6301 Owensmouth Avenue, Woodland Hills, California 91367."  *Id.* ¶ 13.  Since the amount in controversy is below the statutory limit for both entities, as discussed below, the claims against them can be dismissed on that basis.  In the alternative, however, the claims against Farmers Insurance Exchange should be dismissed for the reasons stated in the Motion to Dismiss filed by Defendant Harleysville Insurance Company, in which Defendant Farmers Insurance Exchange respectfully joins.

individual basis.  As explained below, Professionals fails to allege facts showing that the jurisdictional amount has been met as to the Small Claims Defendants.  Therefore, the claims against the Small Claims Defendants should be dismissed.

### B.  The Amount In Controversy With Respect to Each of The Small Claims Defendants Does Not Exceed $75,000

To satisfy the jurisdictional amount in controversy requirement, a complaint must show "a sufficient sum in good faith."  *Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003).  Here, Professionals seeks far less than $75,000 in actual damages from each of the Small Claims Defendants.  Even if Professionals never challenged federal court jurisdiction as to the amount in controversy, that amount must still be shown to establish jurisdiction under 28 U.S.C. § 1332.  Here, unspecified claims for punitive damages, attorneys' fees, and administrative costs do not suffice.[9]  Although punitive damages and reasonable attorneys' fees can be included in determining the jurisdictional amount in controversy, there must be some basis in the complaint for such damages in an amount sufficient to meet the jurisdictional threshold.  *See Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 753–54 (11th Cir.2010) ("without facts or specific allegations, the amount in controversy could be divined only by looking at the stars—only through speculation—and that is impermissible." (internal citation and quotation marks omitted)); *see also  Florida Emergency Physicians Kang & Assocs., M.D., P.A. v. Auto-Owners Ins. Co.*, No. 6:12-CV-1006-ORL-37, 2012 WL 3537223, at *2 (M.D. Fla. July 30, 2012) (no jurisdiction where plaintiff expressly sought "a sum that does

---

[9] Professionals alleges dollar amounts in the complaint for "administrative costs" and "delay time costs."  *See* Compl. ¶ 82.  But those amounts are aggregated, *id.*, and therefore cannot be the basis for finding that jurisdiction is present.  *See* Supra Part I.A.  It is also implausible that Hartford Casualty's alleged $2,500 in actual damages could give rise to over $72,500 in "delay time costs" and "administrative costs."  *See* Compl. ¶ 82.  The same holds for the other Small Claim Defendants.

not come close to the required jurisdictional showing"), *report and recommendation adopted*, No. 6:12-CV-1006-ORL-36, 2012 WL 3521479 (M.D. Fla. Aug. 15, 2012).

In this case, there are no allegations to suggest that over $65,000 in legal fees would be reasonable to recover in collecting less than $10,000 in allegedly unpaid repair bills from each of the Small Claims Defendants. *See, e.g.*, *Bradley v. GMAC Ins. Co.*, No. CV 03-5103, 2006 WL 8446175, at *1 (E.D. Pa. July 12, 2006), *aff'd,* 320 F. App'x 125 (3d Cir. 2008) (ordering plaintiff to justify reasonableness of fee petition in light of the factors set out in *Polselli v. Nationwide Mut. Fire Ins. Co.*, 126 F.3d 524, 532 (3d Cir. 1997)). The claim to attorneys' fees is unsupported and does not establish diversity jurisdiction.

Likewise, the bad faith claim cannot plausibly support damages sufficient to establish diversity jurisdiction because purported "bad faith" allegations are simply a repackaging of the antitrust claims repeatedly rejected by this Court and the Eleventh Circuit.  In essence, Professionals alleges that "bad faith" occurs whenever an insurance company refuses to pay more for repairs than others are willing to pay, or for work that other auto body shops will perform for less.[10]  But that is the nub of the discredited antitrust claims repeatedly rejected by this Court and the 11th Circuit. *See, e.g.*, *Quality Auto Painting Ctr.*, 917 F.3d at 1269, 1271 (rejecting claim predicated on "choosing the least costly method of repair [that] reduc[es] the reimbursement" or informing insureds "that the shop charges more than any other shop in the area and these additional costs will have to be paid by the consumer").

---

[10] The unjust enrichment and quantum meruit claims fail for at least the same reason—it was known before the repairs were undertaken that insurers allegedly would pay for the least expensive repair option, and no more. *Quality Auto Painting Ctr. of Roselle, Inc. v. State Farm Indem. Co.*, 917 F.3d 1249, 1269, 1273 (11th Cir. 2019) (en banc) ("Because the Plaintiff in each complaint knew before it undertook the repair that each Defendant-Insurance Company would pay no more than State Farm would pay, it clearly was not unjust for the Insurance Company to pay only that amount and no more.  Without satisfying the unjust element, the cause of action fails even if we assume the other elements can be satisfied.").

An insurer who pays for a substantial portion of repairs, which both the body shop and the customer acknowledged might not be reimbursed at all because they opted to make repairs that were not the least expensive, does not exhibit the level of culpability associated with an outsized punitive damages award. *See* Ex. 1 at 12. It is telling that Professionals does not even try to make plausible factual allegations specific to each of the individual claims identified in the various "Exhibit As" that could justify punitive damages. This type of "the-defendant-unlawfully-harmed-me" pleading does not cut the mustard. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Even if some punitive damages were to be contemplated, there is nothing in the Complaint that suggests behavior so reprehensible as to justify an award amounting to more than the jurisdictional amount.

In sum, there is no basis beyond "speculation" to find that that attorneys' fees, punitive damages, or other vague categories of damages exceed the jurisdictional threshold. *See Pretka*, 608 F.3d at 753–54.

## II.   THE ACTIONS AGAINST THE SMALL CLAIMS DEFENDANTS SHOULD BE SEVERED AND DISMISSED UNDER RULE 21

When the Court lacks jurisdiction over some, but not all, of dispensable defendants in a removed case, the Court properly uses Rule 21 to sever and dismiss the claims against those defendants for lack of subject matter jurisdiction. *See Clements v. Essex Ins. Co*., No. 6:16-cv-574-ORL-37, 2016 WL 3144151, at *1-3 (M.D. Fla. June 6, 2016). Under Rule 21, courts regularly dismiss dispensable parties "at any time, on just terms" and "sever any claim against a party" whose joinder destroys subject matter jurisdiction under Section 1332, either because citizenship or insufficiency of the requisite amount-in-controversy. *See* Fed. R. Civ. P. 21; *Clements*, 2016 WL 3144151, at *1-3; *Beacon Fisheries, Inc. v. C.H. Robinson Worldwide, Inc*., No. 3:11-CV-495-J-32MCR, 2012 WL 3100399, at *2 (M.D. Fla. July 30, 2012) (denying

8

motion to remand and dismissing nondiverse party to preserve diversity); *Calixto v. BASF Const. Chems., LLC*, No. 07-60077-CIV, 2008 WL 2490454 (S.D. Fla. June 19, 2008) (dismissing improperly joined party pursuant to Rule 21); *Bos. Post Rd. Med. Imaging, P.C. v. Allstate Ins. Co.*, No. 03-cv-3923-RCC, 2004 WL 1586429, at 1* (S.D.N.Y. July 15, 2004) (dismissing severed claims that failed to meet the jurisdictional amount in controversy).

The Eleventh Circuit has even noted that "where a district court refuses to allow a party to be dropped (when joinder of that party destroys diversity) and bases the refusal upon the legal misconception that the cause of action cannot proceed without that party, the district court has committed an abuse of discretion." *Fritz v. Am. Home Shield Corp.*, 751 F.2d 1152, 1154 (11th Cir. 1985) (internal citation and quotation marks omitted); *Bennick v. Boeing Co.*, 427 F. App'x 709, 712-13 (11th Cir. 2011) (affirming district court's "reasonable" dismissal of defendants over whom the court lacked jurisdiction under Rule 21) (citing *Fritz*, 751 F.2d at 1154).  Thus, if the continued presence of a dispensable party under Rule 19 would destroy subject matter jurisdiction, the Court should dismiss that party from the action and retain jurisdiction over the remainder of the case against the other parties.  *Clements*, 2016 WL 3144151, at *2.

### A.    Severance and Dismissal of the Small Claims Defendants Is the Appropriate Remedy

In *Clements*, the plaintiff sued two defendants in state court.  *Clements*, 2016 WL 3144151, at *1.  One defendant removed to federal court even though inclusion of the second defendant would destroy subject matter jurisdiction (in that instance because of lack of diversity).  *Id.* at *1.  Despite the lack of subject matter jurisdiction, the Court did not remand the case against the second defendant to state court.  *Id.* at *2-3.  Instead, the Court relied on its authority under Rule 21 to sever the second defendant's claims and then dismiss that defendant, thereby preserving its jurisdiction over the case.  *Id.* at *2-3.  In doing so, the Court noted that "a

judgment rendered in [the dismissed defendant's] absence would be adequate and would not prejudice the parties," and therefore concluded that the non-diverse defendant was a "dispensable party" under Rule 19.  *Id.*

Here, as in *Clements*, none of the Small Claims Defendants are "indispensable" to any claims against the other Defendants.  *Id.*  Plaintiff's claims are derivative of numerous individual policyholders' breach of contract and other claims, which occurred at different times and are specific to each Defendant insurer, each insured, each individual policy, and each disputed repair.  Dismissal of the Small Claims Defendants is proper precisely because their presence is not necessary for the adjudication of the other claims, and the Court does not have jurisdiction over the claims against them.  No party would be prejudiced by the dismissal of the Small Claims Defendants.  *Id.*  Accordingly, each of the Small Claims Defendants in this action should be dismissed pursuant to Rule 21.[11]  *See Clements*, 2016 WL 3144151, at *2-3; *see also Bennick*, 427 F. App'x at 712-13.

## B. The Small Claims Defendants Should Be Dismissed Because the Jurisdictional Threshold Cannot Be Met Against Them Individually

Where, as here, the amount in controversy as to each individual defendant does not meet or exceed $75,000, the Court lacks subject matter jurisdiction over a claim and should dismiss

---

[11] Although the text of 28 U.S.C. § 1447(c) states that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded," the Eleventh Circuit has instructed District Courts to remand removed cases where the Court lacked jurisdiction over each of the defendants, and thus the *entire case*.  Here, by contrast and consistent with the practice of district courts within the Eleventh Circuit, Section 1447(c) does not apply because the Court will retain jurisdiction over the case even after dismissing the defendants over which it lacks jurisdiction, making dismissal the appropriate remedy as to the Small Claim Defendants.  *See., e.g.*, *McGee v. Solic. Gen. of Richmond Cty., Ga.*, 727 F.3d 1322, 1326 (11th Cir. 2013) (vacating dismissal and instructing district court to remand where there was no jurisdiction over *entire case*); *Coccaro v. Geico Gen. Ins. Co.*, 648 F. App'x 876, 881 (11th Cir. 2016) (vacating order dismissal of *entire case* for lack of subject matter jurisdiction and instructing district court to remand the action despite lack of pending motion to remand); *Esteves v. SunTrust Banks, Inc.*, 615 F. App'x 632, 636 (11th Cir. 2015) ("The Supreme Court has noted that the literal words of § 1447(c) give district courts no discretion to dismiss rather than remand an action when subject-matter jurisdiction is lacking.") (vacating dismissal and instructing district court to remand where there was no jurisdiction over *entire case*).

under Rule 21.  For example, in *Boston Post Road Medical Imaging, P.C.* 2004 WL 1586429

at *1, the Plaintiff, a medical-services provider, alleged that fifty-nine of its patients assigned to

it their benefits to no-fault insurance payments under New York law.  The assignors were

involved in separate automobile accidents, and none of their individual claims reached or

exceeded $75,000.  *Id*.

The *Boston Post Road* Court held that the fifty-nine claims arose out of "distinct

automobile accidents which led to different injuries to different individuals who underwent

distinct medical services, payment for which was denied for varying reasons."  *Id.* Accordingly,

the Court severed the claims.  *Id*. at *3.  Once severed, the Plaintiff had "fifty-nine separate

claims, none of which amount[ed] to $75,000 or more."  *Id.*  Because the claims failed to meet

the amount in controversy requirement of 28 U.S.C. § 1332, the *Boston Post Road* Court

dismissed the claims without prejudice.  *Id.*

Here, as in *Boston Post Road*, Plaintiff's claims are clearly separate and distinct,

involving assignments from individual policyholders relating to individual claims.  Severance

and dismissal of the claims against the Small Claims Defendants pursuant to Rule 21 is proper

where, as here, the individual claims against the defendants are all different and, once severed,

fail to exceed the amount in controversy requirement.  *Id.*  Accordingly, the Court should sever

each of the claims against the Small Claims Defendants and dismiss the claims without prejudice

for lack of subject matter jurisdiction.  *Id.*

## III. IN THE ALTERNATIVE, THE CASE SHOULD BE DISMISSED PURSUANT TO RULE 12(B)(6)

### A. Plaintiff's Complaint Should Be Dismissed Pursuant to Rule 12(b)(6) for Improper Claim-Splitting

If the Court declines to dismiss the Small Claims Defendants for lack of jurisdiction, it can

exercise its discretion to dismiss the Complaint because Professionals has engaged in improper

claim-splitting.  The Eleventh Circuit has held that improper claim-splitting is an appropriate grounds for dismissal under 12(b)(6).  *Vanover v. NCO Fin. Servs., Inc.*, 857 F.3d 833, 836 n.1 (11th Cir. 2017) (citing *Concordia v. Bendekovic,* 693 F.2d 1073, 1075–76 (11th Cir. 1982)).  Indeed, dismissing for improper claim-splitting will ensure that this Plaintiff cannot "split up his demand and prosecute it by piecemeal, or present only a portion of the grounds upon which relief is sought, and leave the rest to be presented in a second suit, if the first fails."[12] *Id*. at 841 (quoting *Stark v. Starr*, 94 U.S. 477, 485, 24 L.Ed. 276 (1876)).  The claim-splitting doctrine "ensure[s] fairness to litigants and . . . conserve[s] judicial resources."  *Id.* (alterations in original).  In the Eleventh Circuit, to determine whether a plaintiff has engaged in improper claim-splitting, the court applies a two-factor test: "(1) whether the case involves the same parties and their privies, and (2) whether separate cases arise from the same transaction or series of transactions." *Id.* at 841–42.  Applying the two-factor test to the *Professionals* action, there is clearly improper claim-splitting that warrants dismissal.

### 1.    The Professionals Complaint Involves the Same Parties and Privies as the *Alliance* Action, Which Was Filed in Pennsylvania Earlier Than *Professionals*

The first factor of the claim-splitting analysis, whether the case involves the same parties and their privies, is satisfied here.  As stated above, the plaintiff in the *Professionals* action, Professional, Inc. d/b/a Professionals Auto Body, is also a plaintiff in the *Alliance* matter, No. 14-cv-6008 (M.D. Fla.).  The procedural posture of the *Alliance* action illustrates that Professionals has engaged in improper claim-splitting.  The *Alliance* action was first filed on October 31, 2014,

---

[12] Claim-splitting applies equally to cases filed in state court and removed to federal court as to cases filed in the first instance in federal court.  *See, e.g., Katz v. Gerardi*, 655 F.3d 1212 (10th Cir. 2011) (affirming district court's dismissal of complaint for improper claim-splitting, where plaintiff had filed a federal court action in Colorado and then joined a later-filed class action, based on same facts, that was originally filed in Illinois state court and was later removed to federal court and transferred to Colorado).

and asserted both federal and state law claims.  This Court dismissed the first *Alliance* complaint in August 2015, with leave to amend.  *See* No. 6:14-cv-06008 (Doc. 107).  The Amended Complaint in *Alliance* was filed on September 19, 2015 (one day after the deadline to amend).  The Amended Complaint asserts only federal law claims.  On December 22, 2016, the Court issued an order staying the *Alliance* action until the appeals for other cases in the MDL were resolved. *See* No. 6:14-cv-6008 (Doc. 130).  Just months later, Professionals filed state law claims (arising from the same core allegations as in *Alliance*) in this separate action, in the Court of Common Pleas in Pennsylvania, in an apparent attempt to undermine this Court's jurisdiction.

Many of the Defendants in this case, or other entities in the same family as Defendant in this case, were named in the *Alliance* action.[13]  Moreover, at the time that the *Professionals* case was filed in 2017, twenty-one of the thirty-two Defendants in the *Professionals* Action had already been named in this MDL, while six other of the Defendants were part of a family of insurers named in the MDL.  In *Yellow Pages Photos, Inc. v. Dex Media, Inc.*, No. 8:18-cv-1872-T-36, 2019 WL 2247701, at *3–4 (M.D. Fla. May 24, 2019), the court extended the "same parties" factor to business entities in the same family.  There, the court dismissed an action filed against two defendants, YP LLC and YP Intellectual Property LLC, for improper claim-splitting where one party, YP LLC, was also named in the earlier-filed lawsuit brought by the same plaintiff, and the other party, YP Intellectual Property LLC, "though only named as a defendant in [Yellow Pages]," was "a sister company" of YP LLC.  *Id* at *3-4.  Accordingly, the first factor of the claim-splitting analysis is satisfied here, where the *Professionals* case involves the same parties "and their privies" as the *Alliance* case and several other cases in the MDL.

---

[13] For example, Hartford Casualty, a named defendant in this case was also named as a defendant in *Alliance*.

2.      *Alliance* **and this Case Arise From**
**the Same Transaction or Series of Transactions**

The second factor of the claim-splitting analysis, whether separate cases arise from the same transaction or series of transactions, is also satisfied here.  The *Professionals* action "arise[s] from the same transaction or series of transactions" as the *Alliance* action.  *Yellow Pages Photos*, 2019 WL 2247701, at *3–4.  Courts in the Eleventh Circuit have held that cases "arise from the same transaction or series of transactions" when they are "based on the same nucleus of operative fact."  *Id.*

In the *Professionals* Action, the Plaintiff filed suit for alleged underpayment of "services rendered and repairs made by plaintiff, Professionals."  Compl. ¶ 40, *Professionals*, No. 6:18-cv-6023 (M.D. Fla.).  The *Professionals* action contains the same core factual allegations that have been alleged in the earlier-filed *Alliance* action, as well as in the twenty-four other copycat cases over which Judge Presnell has presided in this MDL for the last several years.  *Compare, e.g.*, Compl. ¶ 44, *Professionals*, 6:18-cv-6023 ("Over a period of years, the various Defendants have engaged in intentional, ongoing and concerting courses of conduct in order to improperly and illegally control and depress the costs of automobile repairs, which has all been to the detriment of Plaintiff and the substantial benefit of Defendants."), *with* Complaint ¶ 83, *Alliance,* 6:14-cv-6008 ("Over the course of several years, the Defendants have engaged in an ongoing, concerted and intentional course of action and conduct with State Farm acting as the spearhead to improperly and illegally control and depress automobile damage repair costs to the detriment of the Plaintiffs and the substantial profit of the Defendants.").

14

As a further example, *Professionals* and the initial complaint in *Alliance* similarly assert:

| *Professionals* | *Alliance* |
|---|---|
| "Defendants have engaged in intentional, ongoing and concerting courses of conduct in order to improperly and illegally control and depress the costs of automobile repairs, which has all been to the detriment of Plaintiff and the substantial benefit of Defendants." Compl. ¶ 44, *Professional*, 6:18-cv-6023 (M.D. Fla. Sept. 22, 2017) (ECF No. 1-2). | "Defendants have engaged in an ongoing, concerted and intentional course of action and conduct … to improperly and illegally control and depress automobile damage repair costs to the detriment of the Plaintiffs and the substantial profit of the Defendants.", Compl. ¶ 83, *Alliance*, 6:14-cv-6008 (M.D. Fla. Oct. 31, 2014) (ECF No. 1). |
| Plaintiff has "expended significant costs in the sense of labor and materials to the benefit of each Defendant and each Defendant's claimant or insured." *Professional* Compl. ¶ 56. | "Performing said services and expending material resources benefitted Defendants and Defendant's insured/claimants." *Alliance* Compl. ¶ 145. |
| Defendants "attempted to direct Plaintiff to utilize inferior parts and/or to perform inferior service . . . ." *Professional* Compl. ¶ 93. | Defendants direct Plaintiffs to "utiliz[e] used and/or recycled parts rather than new parts even when new parts are available and a new part would be the best and highest quality repair to the vehicle;. . . ." *Alliance* Compl. ¶ 118. |
| Defendants have "failed and/or refused to remit full reimbursement to Plaintiff for the necessary repairs to each vehicle." *Professional* Compl. ¶ 69. | Defendants "refus[e] and/or fail[] to compensate Plaintiffs for ordinary and customary repairs and materials costs places Plaintiffs in the untenable position of either performing incomplete and/or substandard repairs . . . ." " Alliance Compl. ¶ 126. |

In *Professionals*, the Plaintiff alleges certain additional facts, including that each policyholder has executed an "assignment of proceeds" allegedly "authorizing Professionals to recover any unpaid amount" from the insurers that was purportedly owed to Professionals.  Compl. ¶ 40 (6:14-cv-6023).  The additional allegations in the *Professionals* action relating to the executed assignments of proceeds do not "change[] the essential nature" of the claims, nor do they suggest that Professionals' "claims do not arise from the same 'series of transactions' as those" asserted in

the *Alliance* complaint. *Rumbough v. Comenity Cap. Bank*, 748 F. App'x 253, 256 (11th Cir. 2018). The "nucleus of operative facts" is the same in both actions. *Yellow Pages Photos*, 2019 WL 2247701, at *3–4.

Moreover, there are overlapping causes of action between *Professionals* and *Alliance*. Like the initial Complaint in *Alliance*, the *Professionals* Complaint asserts claims for unjust enrichment, quantum meruit, and tortious interference. The fact that in the *Professionals* action, the Plaintiff asserts certain additional causes of action does not change the outcome of the claim-splitting analysis. The Eleventh Circuit has held that the addition of separate causes of action in a later-filed suit does not prevent dismissal for improper claim-splitting. *See Vanover*, 857 F.3d at 843; *see also Watkins v. City of Lauderhill Police*, No. 18-cv-60110, 2018 WL 10246972, at *2 (S.D. Fla. Feb. 7, 2018) (plaintiff engaged in claim-splitting where he filed two lawsuits against the same Defendants and his causes of action arise from the same nucleus of operative facts, even though he added new causes of action to the later-filed action). "To rule otherwise would defeat the objective of the claim-splitting doctrine to promote judicial economy and shield parties from vexatious and duplicative litigation while empowering the district court to manage its docket." *Id.*

Further, the "assignments of proceeds" alleged in *Professionals* date back to 2013, well before the filing of the first complaint in *Alliance*, and certainly before the filing of the untimely Amended Complaint in *Alliance*. *See* Compl. ¶ 38 (6:14-cv-6023) ("At various times between August, 2013 up through the date of this filing, any individuals insured by the various defendants have brought their automobiles to the plaintiff's auto body repair shop for repairs. . . ."). Indeed, the conduct alleged in both this case and in *Alliance* are "related in time," as well as in nature. *Vanover,* 857 F.3d at 841–42 (the nucleus of operative fact is "to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or

16

motivation") (internal citations omitted).  Professionals could have added these additional causes of action "available to it at the time it filed" the *Alliance* action, <u>or</u> could have timely filed its Amended Complaint in *Alliance* with those causes of action added.  *Yellow Pages Photos*, 2019 WL 2247701, at *5 (citing *Vanover*, 857 F.3d at 843).  Allowing Professionals to "avoid the consequences" of its choice *not* to add these claims to the *Alliance* action would "defeat the objective of the claim-splitting doctrine to promote judicial economy and shield parties from vexatious and duplicative litigation while empowering the district court to manage its docket."  *Id.*

Accordingly, the *Professionals* case does not raise a "new and *independent*" claim, and therefore it satisfies the second factor of the claim-splitting test.  *Rumbough,* 748 F. App'x at 255-56 (holding that merely alleging "additional facts or causes of action" is insufficient to change "the essential nature" of the claims) (emphasis added).

Professionals filed this case in Pennsylvania to avoid the MDL action and the Court's dismissal of its claims, and in an obvious effort to push its claims through the state court system while the MDL was stayed.  The Complaint should be dismissed for improper claim-splitting.

### B.     In the Alternative, The Court Should Grant the Defendants' Motion to Dismiss for Failure to State a Claim

The case should be dismissed as to the Small Claims Defendants for lack of jurisdiction, or for improper claim-splitting.  In the alternative, however, the case should be dismissed under Rule 12(b)(6) based upon the remainder of the arguments made in the Motion to Dismiss jointly filed by the Defendants in this action, in which the Small Claim Defendants respectfully join.

## **CONCLUSION**

The burden of establishing diversity jurisdiction over the claims against the Small Claim

Defendants has not been met, and the Plaintiff has engaged in improper claim-splitting.  The case

should be dismissed.

/s/ Thomas G. Rohback
Thomas G. Rohback
Drew A. Hillier
AXINN, VELTROP & HARKRIDER LLP
90 State House Square
Hartford, CT 06103
Phone: (860) 275-8100
Facsimile: (860) 275-8101
trohback@axinn.com
dhillier@axinn.com

*Attorneys for Defendant*
*Hartford Casualty Insurance Company*

/s/ David L. Yohai
David L. Yohai
John P. Mastando III
Weil, Gotshal & Manges, LLP
767 Fifth Ave
New York, NY 10153-0119
Phone: 212-310-8000
Fax: 212-810-8007
Email: david.yohai@weil.com
Email: john.mastando@weil.com

*Attorneys for 21st Century Insurance*
*Company and Farmers Insurance Exchange*

## <u>CERTIFICATE OF SERVICE</u>

I, Thomas G. Rohback, certify that on August 7, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a Notice of Electronic Filing to all counsel of record that are registered with the Court's CM/ECF system.


_/s/ Thomas G. Rohback_
Thomas G. Rohback